UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:23-CV-01401** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CRAIN BROTHERS INC** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 16] filed by the United States. Defendant Crain Brothers Inc. ("CBI") opposes the motion. Doc. 20.

### I.
#### BACKGROUND

This suit arises from the sinking of a barge owned by CBI, and costs incurred by the United States in removing the barge's wreckage from the Calcasieu River Bar Channel. The channel is maintained by the U.S. Army Corps of Engineers ("Corps") and connects the Gulf of Mexico to the Port of Lake Charles. Barge BHS 104 and its rock cargo sunk in the channel when Hurricane Delta struck Southwest Louisiana on October 9, 2020. Doc. 16, att. 2, ¶¶ 8–9. It was first located by an NOAA ship conducting post-hurricane surveys of the channel on October 12, 2020. *Id.* at ¶ 10. Because the channel had been partially reopened to shallow draft vessels on that date, the Corps determined in consultation with

the U.S. Coast Guard that the sunken barge created an emergency situation requiring immediate action.[1] *Id.* at ¶¶ 13–14.

Meanwhile, CBI chartered a survey boat to search for four missing barges on October 12, 2020. Doc. 20, att. 1, ¶ 5. The following day, McKinney Salvage LLC used scan equipment on its vessel to search for the BHS 104. *Id.* at ¶ 6. On October 14, CBI authorized divers to identify a barge outside the jetties though the water was too rough for the operation for the next several days. *Id.* at ¶¶ 7–9, 11. The CBI-authorized dive team was not able to identify the barge on October 19, but identified its cargo as large rocks. *Id.* at ¶ 12.

On October 20, the Corps informed CBI that it would remove the sunken barge from the channel pursuant to the former's authority under the Rivers and Harbors Act, 33 U.S.C. §§ 409, 415. Doc. 16, att. 2, pp. 14–15. CBI confirmed ownership of the barge, based on its sized and cargo, on October 23 and requested that it be allowed to conduct its own salvage operation. *Id.* at pp. 16–17. It stated in relevant part:

> As you may know, Crain Brothers engaged divers to inspect the Barge. Although the divers were unable to positively identify the Barge, the size of the barge and the cargo caused Crain Brothers to accept that the Barge is one of its chartered barges. Based on that belief, Crain Brothers is working with Big River Ship Builders to provide a proposal to salvage the Barge. Crain Brothers anticipates that the ETA of salvage equipment arriving on site is 26 October 2020.

*Id.* CBI sent salvage plans from Big River Ship Builders, of Vicksburg, Mississippi, to the Coast Guard at 1:25 pm and to Renee Scholl and Tracy Faulk with the Corps at 8:48 pm

---

[1] The official determination was not issued until November 6, 2020, but states that the channel has only been reopened to smaller draft vessels in coordination with the Coast Guard since Hurricane Delta and that these restrictions would remain in effect until the barge was removed. Doc. 16, att. 2, p. 5.

on October 23. Doc. 20, att. 1, pp. 14, 24. However, the Corps responded the following day that it had already commenced salvage operations "[d]ue to the urgency of the situation" through the U.S. Navy's Supervisor of Salvage and Diving. Doc. 16, att. 2, p. 18. To this end it used Navy contractor Donjon Marine Co., Inc. ("Donjon"), which had been authorized on October 16, 2020, and mobilized to the site the following day from Newark, New Jersey. *Id.* at 21–29.

According to the declaration of marine surveyor Anthony Anselmi, Donjon's chartered vessel MR. DEAN and barge SF 2200 only reached Cameron, Louisiana, on October 28, 2020—one day after the equipment from CBI's October 23 salvage proposal arrived. Doc. 20, att. 1, ¶¶ 24–25. Donjon's equipment crane barge FARRELL, tug MEGAN ANN, and deck barge SUE P did not reach the site until November 3. *Id.* at ¶ 26. Donjon completed removal operations on November 13, and the channel was fully reopened to commercial traffic at that time (though the Coast Guard had eased restrictions throughout the project). Doc. 16, att. 2, ¶¶ 20–21.

The project cost the Corps $2,619,007.15 after adjusting for the $20,225 it recovered for the scrapped remnants of the barge. *Id.* at ¶¶ 22–25; *see id.* at pp. 8–9 (cost summary). The government now seeks to recover this amount from CBI under a provision of the Rivers and Harbors Act known as the "Wreck Act," 33 U.S.C. § 409. It filed a petition in this court and has moved for summary judgment on the issue of CBI's liability. Docs. 1, 16. CBI opposes the motion, arguing that the government acted arbitrarily and capriciously in pursuing emergency removal and refusing to consider CBI's salvage proposal. Doc. 20.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

# III.
## LAW & APPLICATION

The Rivers and Harbors Act represents "an assertion of the sovereign power of the United States" over its navigable waterways pursuant to Article I, § 8 of the Constitution and "was obviously intended to prevent obstructions in the Nation's waterways." *In re Southern Scrap Material Co., LLC*, 541 F.3d 584, 588 (5th Cir. 2008) (quoting *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967)). The "Wreck Act," codified as Section 15 of the Rivers and Harbors Act, 33 U.S.C. § 409, addresses the problem of obstructions caused by sunken vessels. *Univ. of Tex. Med. Branch at Galveston v. United States*, 557 F.2d 438, 444 (5th Cir. 1977). It provides, in relevant part, that the owner of a craft wrecked and sunk in a navigable channel must

> commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered an immediate abandonment of the craft, and subject the same to removable by the United States as provided for in sections 411 to 416, 418, and 502 of this title.

33 U.S.C. § 409. These provisions apply equally to negligent and non-negligent owners of sunken vessels. *Agri-Trans Corp. v. Gladders Barge Line, Inc.*, 721 F.2d 1005, 1008 (5th Cir. 1983).

Sections 414 and 415 expressly authorize the government to remove such vessels when the owner "fails to prosecute immediate removal diligently" as set forth above. *In re Southern Scrap Material Co., LLC*, 541 F.3d at 589. Section 415 handles emergency situations, providing immediate authority to the government through the Secretary of the Army to take possession of and remove a vessel that is sunk, stuck, or otherwise obstructing "any Government canal or lock, or in any navigable waters mentioned in section 414 of

this title, in such a manner as to stop, seriously interfere with, or specially endanger navigation[.]" 33 U.S.C. § 415(a). The statute also states that the officer charged with the vessel's removal "may in his discretion give notice in writing to the owners of any such obstruction requiring them to remove it." *Id.* The actual expense, including administrative expenses, of removal become "a charge against such craft and cargo" and the craft and cargo may be sold if the owner fails to reimburse the government. *Id.* The owner "shall be liable to the United States for the actual cost, including administrative costs, of removal or destruction and disposal" exceeding the amount recovered by the government through the charge placed on the craft and cargo. *Id.* at § 415(c).

As CBI notes, "[t]he determination of whether a wreck poses an obstacle and must therefore be raised rests initially with the Corps, and that determination will be overturned by a reviewing court only if it is arbitrary or capricious." *Agri-Trans Corp.*, 721 F.2d at 1010. The broad discretion granted under § 415 in an emergency "implies nothing with respect to non-emergency situations." *Id.* Instead, under § 414, the sunken obstacle must have existed for at least 30 days or the government must establish abandonment before it can commence removal proceedings. 33 U.S.C. § 414(a).

Here the Corps opted for a salvage operation located in New Jersey and refused to consider CBI's proposed salvage plans, which were apparently not only cheaper[2] but also allowed equipment to reach the site more efficiently. This calls into question how time-sensitive the obstruction was and whether Corps abused its discretion in refusing to

---

[2] Big River Ship Builders of Vicksburg proposed a day rate. Doc. 20, p. 5; doc. 20, att. 1, pp. 25–31. CBI also considered a $1.48 million bid submitted on October 23 by Coral Marine Service LLC of Morgan City, Louisiana, but it is unclear whether this bid was also forwarded to the Corps. *See id.* at 11–13.

consider CBI's proposal. Accordingly, issues of fact prevent the court from making a summary determination at this stage.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 16] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 15th day of January, 2025.

*[signature]*

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**